IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM W. DOUGLAS, JR.,                                                              PLAINTIFF

v.                                  CIVIL NO. 06-2152

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff William W. Douglas, Jr., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).

**Procedural Background:**

The application for DIB presently before this court was filed on January 29, 2004, alleging an inability to work since December 31, 1997, due to chest pain, knee pain and obsessive-compulsive disorder. (Tr. 58-61). Plaintiff's insured status expired on June 30, 2000. (Tr. 62). An administrative hearing was held on November 4, 2004. (Tr. 225-248). Plaintiff was present and represented by counsel.

By written decision dated August 17, 2005, the ALJ found that plaintiff had an impairment or combination of impairments that were severe prior to the expiration of his insured

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

AO72A
(Rev. 8/82)

status. (Tr. 29). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 30). The ALJ found that prior to plaintiff's date last insured, plaintiff retained the residual functional capacity (RFC) to perform light work..[2] Specifically, the ALJ found that plaintiff could occasionally lift and/or carry 20 pounds and occasionally 10 pounds; could sit for 8 hours in an 8-hour workday; and could stand and/or walk up to 3 hours in an 8-hour workday. The ALJ determined plaintiff had some moderate mental limitations in the areas of ability to understand, remember, and carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to set realistic goals and make plans independently of others. The ALJ found these limitations resulted in a functional capacity to perform work where interpersonal contact was only incidental to the work performed, complexity of tasks was learned and performed by rote with few variable and little judgment required, and supervision required was simple, direct and concrete. After submitting interrogatories to a vocational expert and receiving the vocational expert's responses, the ALJ determined plaintiff would be able to perform other work as a production examiner, an escort driver, and a hand packer/bander. (Tr. 30, 107-109, 111).

---

[2] We note that the ALJ states plaintiff can perform sedentary work however the weight limitations are within the light work category. We find the ALJ's findings are consistent with that of light work with limitations and believe his calling the work sedentarty was just an error in opinion writing. We note "[a]ny arguable deficiency in the opinion-writing technique of administrative law judge does not require court to set aside a finding that is supported by substantial evidence." *See Johnson v. Apfel*, 240 F.3d 1145, 1145 (8th Cir. 2001).

AO72A
(Rev. 8/82)

Plaintiff appealed the decision of the ALJ to the Appeals Council. After reviewing the additional medical evidence submitted, the Appeals Council declined to review the decision. (Tr. 4-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties filed appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. # 9,10).

**Evidence Presented:**

At the administrative hearing before the ALJ on November 11, 2004, plaintiff was forty-one years of age. (Tr. 229). Plaintiff testified he obtained his high school education. (Tr. 229).

The medical evidence during the relevant time period reflects the following. In an Initial Psychiatric Evaluation dated November 4, 1998, plaintiff reported feeling real nervous and being unable to concentrate. (Tr. 140). Plaintiff reported he was a "nitpicker" and was driving his family crazy. Upon examination Dr. Max A. Baker noted plaintiff's speech was normal; his thought processes were obsessive and depressed; his associations were intact without loosening, circumstantality or tangentiality; his thought content was without delusions, hallucinations, suicidal or homicidal ideation or violent preoccupations; his orientation was intact to person, place, time and situation; his recent and remote memory were intact; his attention span and concentration were intact; and his language and fund of knowledge were intact. (Tr. 146). Dr. Baker opined plaintiff's mood was depressed; his insight was fair, his judgment was good; and his general appearance was neat. Dr. Baker diagnosed plaintiff with obsessive compulsive disorder with depression and rated plaintiff's global assessment of functioning (GAF) as a 30 at the time of the evaluation and a 60 over the past year.

On November 17, 1998, plaintiff saw Dr. Baker for a medication management visit. (Tr.

139). Plaintiff reported having a slight reduction in his perfectionism and irritability. Plaintiff reported he was still checking on things and over-cleaning. Upon examination, Dr. Baker noted plaintiff's affect was very sad, his mood was low and he had multiple obsessions. Plaintiff's cognition, orientation, memory and intelligence were all normal. Plaintiff's insight and judgment were fair and his motor behaviors were restless. Dr. Baker opined plaintiff was minimally improved and prescribed Prozac and Trazodone.

On December 29, 1998, plaintiff saw Dr. Baker for a medication management visit. (Tr. 138). Plaintiff reported he may be feeling "some better." Plaintiff reported his concentration was better but he continued to have early morning obsessive cleaning. Upon examination, Dr. Baker noted plaintiff's affect was better, his obsessions were marked, his insight and judgment were fair and his motor behaviors were slightly less restless. Plaintiff's appearance, speech, perception, orientation, cognition, memory and intelligence were normal.[3] Dr. Baker opined plaintiff's condition was slightly improved. Plaintiff was given prescriptions for Amitriptyline and Prozac.

On February 12, 1999, plaintiff saw Dr. Baker for a medication management visit. (Tr. 137). Plaintiff reported he had not taken his medication after his family noticed a change. Plaintiff reported he had not taken his medication for two days. He reported an inability to sleep even with taking the Amitriptyline. Upon examination, Dr. Baker noted plaintiff's affect was anxious and that his association was not normal. Plaintiff's mood, speech, perception, intelligence, memory, and insight were normal. Plaintiff's motor behavior was noted to be agitated. Dr. Baker diagnosed plaintiff with Obessessive-Compulsive Disorder and prescribed Zyprexa and Prozac.

---

[3] We are unable to read Dr. Baker's opinion on plaintiff's mood and associations. (Tr. 138).

**AO72A**
**(Rev. 8/82)**

Progress notes dated March 3, 1999, report plaintiff's complaints of pain caused by a mass on his left hand. (Tr. 195). Plaintiff reported the mass has been present for approximately three months and was not caused by any specific traumatic injury. Plaintiff complained of stiffness in his hand in the morning. Plaintiff reported he had been doing carpenter work which seemed to aggravate his hand. Dr. James R. Trusell diagnosed plaintiff with a fibroma or cyst on the dorsum of the left hand. Dr. Trusell recommended excising the cyst and plaintiff agreed.

On March 5, 1999, plaintiff saw Dr. Baker for a medication management visit. (Tr. 136). Plaintiff reported he was still unable to sleep or relax. Plaintiff reported the Zyprexa did not significantly reduce his worrying. Dr. Baker noted plaintiff continued to have a cleaning compulsion. Upon examination, Dr. Baker noted plaintiff's affect was sad and his mood, speech, associations, perceptions, intelligence, recent and remote memory, cognition, insight and judgment were all normal. Plaintiff was instructed to discontinue the use of Zyprexa and Prozac.

On March 8, 1999, plaintiff underwent surgery to remove a cyst on the dorsum of his left hand. (Tr. 194).

Progress notes dated March 22, 1999, report plaintiff was fourteen days following excision of a foreign body granuloma with fibroadipose tissue from the dorsum of his left hand. (Tr. 192). Dr. Trusell noted plaintiff's incision was well healed and there was no evidence of drainage or infection but there was some swelling. Dr. Trusell removed the sutures and instructed plaintiff to gradually resume his normal activities.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

**Discussion:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2000. (Tr. 21, 62). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of December 31, 1997, his alleged onset date of disability, through June 30, 2000, the last date he was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will

we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

With regard to plaintiff's alleged physical impairments, the record reveals that during the relevant time period plaintiff sought treatment for a cyst on his left hand that was removed without any complications. The record establishes plaintiff did have surgery as a child that left him without a chest plate; however, during the relevant time period there is no indication that plaintiff was unable to work due to chest pain. As for plaintiff's knee pain, plaintiff did undergo surgery to repair a ligament tear in early 2001, however, by May of 2001, plaintiff's treating physician had released plaintiff to lift weights, jog, cycle and swim. (Tr. 184). In March of 2002, plaintiff reported that his knee felt great, that he worked out and was very vigorous. (Tr. 183). In August of 2003, plaintiff reported that he was exercising regularly at the gym. (Tr. 129). Based on the record, we find substantial evidence to support the ALJ's determination that prior to June 30, 2000, plaintiff did not have a disabling physical impairment.

With regard to plaintiff's mental impairment, the record shows that in November of 1998 plaintiff reported feeling nervous and having an inability to concentrate. He also reported that

he was a "nitpicker" and was driving his family crazy. At that time, Dr. Baker started plaintiff on medication. The record shows plaintiff saw Dr. Baker for medication management visits in November of 1998, December of 1998, February of 1999, and March of 1999. At the March of 1999 appointment, Dr. Baker discontinued plaintiff's use of medication. There is no indication that plaintiff sought treatment for a mental impairment again until November of 2001, at which time plaintiff reported an increase in problems over the past six months which was after the expiration of plaintiff's insured status. (Tr. 135). As for his cognitive abilities, a review of the record shows plaintiff's treating doctor repeatedly found plaintiff to have normal cognition, memory, intelligence, perception, and orientation during the relevant time period. Based on the record as a whole, we find substantial evidence to support the ALJ's determination that plaintiff did not have a disabling mental impairment during the relevant time period.

At the hearing plaintiff reported that he was unable to do a lot of physical labor, did not participate in sports and was unable to concentrate and that this had been a problem for him throughout his life. (Tr. 230-235). He further testified that he worked as a gopher for his father's business. However a review of the record reveals plaintiff's report that he worked as a carpenter in March of 1999. (Tr. 195). He further reported that he enjoyed working out regularly and participated in very vigorous activities. (Tr. 183). This level of activity belies plaintiff's complaints of pain and limitation, prior to his date last insured, and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996); *See Polaski* at 1322.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all

relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ found that prior to June 30, 2000, plaintiff could occasionally lift and/or carry 20 pounds and occasionally 10 pounds; could sit for 8 hours in an 8-hour workday; and could stand and/or walk up to 3 hours in an 8-hour workday. The ALJ determined plaintiff had some moderate mental limitations in the areas of ability to understand, remember, and carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to set realistic goals and make plans independently of others. The ALJ found these limitations resulted in a functional capacity to perform work where

interpersonal contact was only incidental to the work performed, complexity of tasks was learned and performed by rote with few variable and little judgment required, and supervision required was simple, direct and concrete.

Plaintiff argues that the ALJ erred in not granting more weight to the GAF score assessed by Dr. Baker in 1998 and improperly discounted the findings made by consultative examiner Douglas A. Brown, Ph.D. With regard to Dr. Baker, the ALJ noted Dr. Baker's finding that plaintiff had a GAF score of 30 on November 4, 1998. (Tr. 26). The ALJ, referring to the GAF scales, noted that a score of 30 was defined as "behavior considerably influenced by delusions or hallucinations (incoherent, inappropriate, suicidal preoccupation) and inability to function in almost all circumstances (in bed all day, no job, home or friends), serious impairment in communication and judgment." (Tr. 26). Dr. Baker's November 4, 1998, treatment notes indicate plaintiff's speech was normal; his thought processes were obsessive and depressed; his associations were intact without loosening, circumstantality or tangentiality; his thought content was without delusions, hallucinations, suicidal or homicidal ideation or violent preoccupations; his orientation was intact to person, place, time and situation; his recent and remote memory were intact; his attention span and concentration were intact; and his language and fund of knowledge were intact. (Tr. 146). Dr. Baker opined plaintiff's mood was depressed; his insight was fair, his judgment was good; and his general appearance was neat. After reviewing Dr. Baker's treatment notes for November 4, 1998, and considering the record as a whole, the ALJ found that the GAF score of 30 was inconsistent with Dr. Baker's notes and observations and the record as a whole. We find substantial evidence to support the ALJ's determination that the record as a whole does not support a GAF finding of 30 and that his finding was inconsistent with treatments notes completed by Dr. Baker. *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th

Cir.2000).

We will now address the ALJ's finding regarding the findings made by consultative examiner Douglas A. Brown, Ph.D., in March of 2005. The record reveals plaintiff underwent a battery of psychological tests administered by Dr. Brown in March of 2005. (Tr. 214-218). Test results from the Wechsler Adult Intelligence Scale- Third Edition (WAIS-III) showed that plaintiff had a Full Scale I.Q. score of 63, a Verbal I.Q. score of 65, and a Performance I.Q. score of 68; the Beck Anxiety Inventory; tests results from the Beck Anxiety Inventory indicated that plaintiff had moderate anxiety; the Beck Depression Inventory indicated that plaintiff had moderate depression. (Tr. 215). The doctor opined that plaintiff had at Axis I: Major Depression, Obsessive-Compulsive Disorder, and Alcohol Abuse, in remote remission; at Axis II: Mild Mental Retardation, Personality Disorder, Aggressive, Obsessive-Compulsive, Schizoidal and Avoidant Elements. (Tr. 216). Plaintiff argues that the ALJ did not properly address Dr. Brown's findings and in particular did not give enough weight to the finding that plaintiff has a full Scale I.Q. of 63 which falls within the mild mental retardation range. We find that the ALJ did properly address plaintiff's cognitive abilities and found that the record as a whole does not support a finding that plaintiff was functioning within the mild mental retardation level prior to turning 22. *Muncy v. Apfel,* 247 F.3d 728, 733 (8th Cir. 2001) (ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior). Specifically, the ALJ pointed out that Dr. Baker opined plaintiff had normal intelligence at every visit during the relevant time period and that Dr. Heim reported plaintiff "asked good questions" about the possibility of undergoing knee surgery. (Tr. 27-28). Plaintiff did submit his grades from school and a letter from Ms. Pat Black, the Special Program Coordinator, from his school to show support that the

IQ test was accurate.[4]  We however, agree with the Appeals Council that this would not have changed the ALJ's determination.

In discussing the additional evidence submitted to the Appeals Council we further find the assessments completed by Dr. Baker and Dr. Brown opining that plaintiff had disabling mental impairments prior to the expiration of his insured status would not have changed the ALJ's findings.  The ALJ had the notes from both of these medical professionals before him at the time the decision was made. Based on the entire evidence of record we find substantial evidence supporting the ALJ's RFC determination.

Finally, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's interrogatory responses constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work as a production examiner, an escort driver, and a hand packer/bander. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

---

[4] We note we consider this evidence, even though submitted after the date of the ALJ's decision, as the Appeals Council considered it before denying review.  (Tr. 4-7).  *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

DATED this 19th day of July 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)